IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DILLON DANIEL CAMPBELL,

        Plaintiff,

v.                                                                                       Civil Action No. 2:14-CV-22

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

**A. Background**

On March 28, 2014, Dillon Daniel Campbell ("Plaintiff") filed this action under 42 U.S.C. §§ 405(g) for judicial review of an adverse decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") under Titles II of the Social Security Act. 42 U.S.C. §§ 401-433.[1] The Commissioner filed her answer on June 9, 2014.[2] Plaintiff filed his Motion for Summary Judgment on August 8, 2014,[3] and the Commissioner filed her Motion for Summary Judgement on September 8, 2014.[4] The motions are now ripe for this Court's review, and for this report and recommendation.

**B. The Pleadings**

    1. Plaintiff's Motion for Summary Judgement and Memorandum in Support.

---

[1] ECF No. 1.

[2] ECF No. 8.

[3] ECF No. 14.

[4] ECF No. 16.

2. Commissioner's Motion for Summary Judgement and Memorandum in Support

**C. Recommendation**

I recommend that:

1. Plaintiff's Motion for Summary Judgement be **DENIED** because substantial evidence supports the ALJ's decision to: (1) give little weight to the treating source's opinion; (2) give some weight to the examining psychologist; and (3) give significant weight to the state agency consultant. Substantial evidence also support the Administrative Law Judge's residual functional capacity finding.

2. Commissioner's Motion for Summary Judgement be **GRANTED** for the reasons set forth.

## II. FACTS

**A. Procedural History**

On October 12, 2010, Plaintiff applied for DIB benefits alleging a disability beginning on June 26, 2008.[5] R. 149. Plaintiff's claim was denied on December 8, 2010. R. 89. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 95. An ALJ hearing was held on September 5, 2012 before ALJ James J. Pileggi. R. 29-55. Plaintiff, represented by counsel, testified at the hearing, as did a Vocational Expert ("VE"). *Id.* On September 17, 2012, the ALJ found that based on the application for a period of disability and disability insurance benefits filed on October 12, 2010, Plaintiff is not disabled under the Social Security Act. R. 24. Plaintiff appealed this decision to the Appeals Council, which denied review on January 22, 2014. R. 1. Plaintiff then timely brought his claim to this Court.

**B. Medical History**

---

[5] During the ALJ hearing, Plaintiff's counsel orally amended the onset date to July 9, 2010. R. 33.

The following medical history is relevant to the issue of whether substantial evidence supports the ALJ's finding that Plaintiff was not under a disability during the period at issue.

1. Treatment by Rajendra Nigam, M.D., Jennifer Almendrala, M.D, and Rosemarie Colatriano, LCSC.

From January 2008 to July 2012, Plaintiff received treatment from Western Pennsylvania Psych Care Inc. ("PA Psych Care"). R. 313-52, 388-433. While attending PA Psych Care, Plaintiff was attended to at various times by Rajendra Nigam, M.D., Jennifer Almendrala, M.D., or Rosemarie Colatriano, LCSW. *Id.* While at PA Psych Care, Plaintiff was diagnosed and treated for bipolar disorder, obsessive-compulsive disorder, and anxiety. R. 388. Plaintiff's Global Assessment of Functioning ("GAF") was usually recorded in "Progress Notes" created after Plaintiff's appointments at PA Psych Care.[6] From the alleged onset date of July 9, 2010 to July 2012, Plaintiff's recorded GAF never dipped below 60.[7] On July 24, 2012, in the last progress note available in the record, Plaintiff had a GAF of 67. R. 393.

Also on July 24, 2012, a "Mental Status Evaluation" was completed jointly by Dr. Almendrala and Dr. Nigam. R. 388. The evaluation concluded that Plaintiff has a primary diagnosis of bipolar disorder, obsessive-compulsive disorder, and anxiety. *Id.* The evaluation identified Plaintiff's primary symptoms as: "racing thoughts, violent, physically aggressive, verbally

---

[6] GAF "assigns a clinical judgment in numerical fashion to the individual's overall functioning level. Impairments in psychological, social and occupational/school functioning are considered, but those related to physical or environmental limitations are not." *Global Assessment of Functioning*, NEW YORK STATE OFFICE OF MENTAL HEALTH, http://www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf (last visited Dec. 10, 2014).

[7] A GAF between 61 and 70 indicates that a patient exhibits "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Global Assessment of Functioning (GAF) Scale*, MICHIGAN STATE UNIVERSITY, https://www.msu.edu/course/sw/840/stocks/pack/axisv.pdf (last visited Dec. 10, 2014).

3

aggressive, isolates, panic attacks, poor concentration, when manic – no sleep, when depressed – hypersomnia, gets overwhelmed easily, difficulty handling stress and change." *Id.* The evaluation also identified five factors that would impede Plaintiff's ability to complete an eight hour work day.

> (1) The patient would often have difficulty interacting with supervisors during an 8 hour work day
>
> (2) The patient would often have difficulty interacting with coworkers during an 8 hour work day
>
> (3) The patient would often have difficulty managing even a low stress work environment.
>
> (4) The patient would often have difficulty maintaining concentration, pace and task persistence during an 8 hour work day.
>
> (5) The patient experiences approximately 8-9 bad days per month during which their symptoms are increased and they would not be able to complete an 8 hour work shift.

*Id.*

2. Evaluation by Tod Marion, Ph.D.

On November 30, 2010, Tod Marion, Ph.D., conducted a psychological evaluation of Plaintiff. R. 360. Dr. Marion was referred by a state agency to conduct a mental status evaluation. *Id.* Dr. Marion concluded that Plaintiff had "Bipolar I Disorder, . . . learning disability by history . . . [and] hypertension, acid reflux disease . . . ." R. 61. Dr. Marion also noted that Plaintiff has "[g]ood family support, connected to treatment but poor self-control . . . ." *Id.* Dr. Marion recorded Plaintiff's GAF as 35. *Id.*

Specifically, Dr Marion found that Plaintiff's "ability to understand, remember, and carry out instructions" is affected by his impairment. R. 362. Dr. Marion found Plaintiff is not restricted in understanding, remembering, or carrying out short, simple instructions. *Id.* However, Dr. Marion

4

found Plaintiff was moderately restricted understanding, remembering, or carrying out detailed instructions. *Id.* Further, according to the evaluation, Plaintiff was markedly restricted in making judgement on simple work-related decisions. *Id.*

Also, Dr. Marion found that Plaintiff's "ability to respond appropriately to supervisors, co-workers, and work pressures in a work setting" is affected by his impairment. *Id.* According to the evaluation, Plaintiff has a moderate restriction with interacting appropriately with the public, markedly limited in interacted appropriately with supervisors and co-workers, and extremely limited in responding appropriately to work pressures and changes in a usual work setting. *Id.* Lastly, Dr. Marion found that Plaintiff could not manage benefits in his own best interest. R. 363.

3. Mental Residual Functional Capacity Assessment and Psychiatric Review Technique

On December 8, 2010, Emanuel Schnepp, Ph.D., completed a Mental Residual Functional Capacity Assessment ("Mental RFC") and a Psychiatric Review Technique. R. 365-381. Dr. Schnepp is a state agency psychologist. In Plaintiff's Mental RFC, after summarizing conclusions derived from the evidence in the medical file, Dr. Schnepp concluded that Plaintiff can:

> perform simple, routine, repetitive work in a stable environment. He can understand, retain, and follow simple job instructions, i.e., perform one and two-step tasks. He also can make simple decisions. His frustration tolerance is low. However, he is self-sufficient. He can sustain an ordinary routine without special supervision. Furthermore, the can function in production-oriented jobs requiring little independent decision making. The limitations resulting from the impairment do not preclude [Plaintiff] from performing the basic mental demands of competitive work on a sustained basis.

R. 367.

In the Psychiatric Review Technique, Dr. Schnepp found that Plaintiff's organic mental disorder (learning disorder) and affective disorder (bipolar disorder) were the two categories upon

5

which his medical disposition is based. R. 369-72. Dr. Schnepp found that Plaintiff has only a mild restriction of activities of daily living. R. 379. The review also concluded that Plaintiff has moderate difficulties in maintaining social functioning and concentration, persistence, or pace. *Id.* In conclusion, Dr. Schnepp noted:

> The MER indicates that [Plaintiff] is preoccupied with getting [social security disability]. In this context, he presented as distressed at the [mental status evaluation], and was rated with a GAF of 35. By contrast, he consistently is rated with GAFs in the 60s by his treating psychiatrist. Furthermore, progress notes from other treating sources consistently describe him as being in no acute distress. The claimant is independent with his self-care and basic ADLs.

R. 381.

**C. Testimonial Evidence**

Testimony was taken at the hearing held on September 5, 2012. R. 29. The following portions of the testimony are relevant to the disposition of this case.

Plaintiff was born on April 22, 1981, and was 31 years old at the time of the ALJ hearing. R. 36. Plaintiff is married and has a high school education. *Id.* Plaintiff started therapy when he was thirteen years old. R. 38. Plaintiff has a driver's license, but testified that he does not drive because he experiences panic attacks. R. 38-39. When he has panic attacks, Plaintiff testified that his heart races, he has difficulty breathing, and he begins to shake. R. 39. Plaintiff has been going to mental health treatments on a regular and ongoing basis. R. 40. Plaintiff testified he typically avoids public places. R. 40-44. Plaintiff believes his conditions has gotten worse over time. R. 44. Plaintiff is able to complete domestic chores and cook. R. 47. Plaintiff testified that his medication causes drowsiness. R. 49. Plaintiff testified that, at times, he will develop insomnia and, nearly once a month, he will get migraines. R. 50-51.

A VE also testified at the hearing. R. 52. The ALJ posed the following hypothetical to the VE:

> [L]et's assume we have an individual, 31 years of age, high school education, work experience . . . [as] defined and described. Let's assume no exertional limitations but he would be limited to simple and repetitive tasks involving routine work processes and setting not involving high stress, high stress being defined as high quotas or close attention to quality production standards. The claimant would not be able to engage – to be engaged in kind of work with the public and would not be able to engage in team work or team type activities. . . . Is he able to return to any of his previous jobs?

R. 52-53. The VE testified that the hypothetical individual could not return to his previous work. R. 53. However, the VE cited multiple jobs that an individual, as described in the ALJ's hypothetical, could perform. *Id.* The VE testified that an individual would not be able to perform the jobs listed if that individual would be absent from work more than three times a month for multiple months. *Id.* Further, the VE testified that an individual would not be able to perform the jobs listed if that individual were off task ten to fifteen percent of the work day. *Id.* Also, the VE testified that an individual would not be able to perform the jobs listed if he, because of his condition, reacted inappropriately to supervisors on more than one or two occasions. *Id.*

### III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 9, 2010, the alleged onset date of Plaintiff's disability. R. 14. At step two, the ALJ found that Plaintiff has the following severe impairments: a learning disability, a bipolar disorder, and an alcohol abuse disorder. *Id.* At the third step, the ALJ found that none of Plaintiff's impairments or combination of impairments meet or medically equal

7

the severity of one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1. R. 15. Before considering step four of the sequential evaluation process, the ALJ determined that Plaintiff has the residual functional capacity to:

> perform a full range of work at all exertional levels, but with the following nonexertional limitations: he is limited to performing only simple, repetitive, routine work processes and setting with no high stress: no high production quotas and no close attention to quality production standards; can preform no work with the public and no tasks requiring team work.

R. 17-18. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. R. 22. At the final step, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. R. 23.

## IV. MOTIONS FOR SUMMARY JUDGMENT

### A. Contentions of the Parties

Plaintiff contends that the ALJ's unfavorable decision is based on legal error and not supported by substantial evidence. Specifically, he argues that (1) the ALJ erred when he gave "little weight" to his treating source's opinion and failed to acknowledge that his treating source's opinion is supported by the record; (2) the ALJ failed to give appropriate weight to Dr. Marion's report and did not provide an adequate explanation for his decision; (3) the ALJ erred by giving "considerable weight" to the Psychiatric Review Technique and Mental RFC completed by a state agency psychologist; and (4) the ALJ's RFC finding is not supported by substantial evidence because it does not accurately incorporate all of Plaintiff's individual impairments and limitations supported by the record.

Defendant argues that the ALJ's decision is supported by substantial evidence and should

be affirmed as a matter of law. Specifically, Defendant contends that (1) the ALJ reasonably afforded little weight to the treating source opinion; (2) the ALJ properly adopted the opinion of Dr. Marion and sufficiently explained his rationale; and (3) the ALJ reasonably credited the state agency psychologist's opinion and accurately portrayed it in the RFC finding.

**B. The Standards**

1. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

**C. Discussion**

1. The ALJ's Decision to Give "Little Weight" to the Treating Source's Opinion

Plaintiff argues that the ALJ erred because he did not give appropriate weight to the treating source's opinion and did not explain on what precise, specific medical evidence he relied on to come to such a conclusion. Plaintiff contends that the mental status evaluation, which indicates that Plaintiff is likely unable to complete an eight hour workday, is consistent with the record and previous progress notes from PA Psych Care during the relevant period.

Defendant argues that the ALJ reasonably afforded little weight to the treating source's opinion. Defendant contends that the mental status evaluation is inconsistent with the record and of the treating source's previous medical assessments. Therefore, it was proper for the ALJ to afford little weight to the opinion.

All medical opinions are to be considered in determining the disability status of a claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's

opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(c) (2012). Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). However, "although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Id.* (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam)). The opinion and credibility of claimant's treating physician is entitled to great weight but may be disregarded if there is persuasive contradictory evidence. *Evans v. Heckler*, 734 F.2d 1012, 1015 (4th Cir. 1984).

In the ALJ's decision, he noted that Plaintiff "continued to receive mental health treatment" at PA Psych Care "from 2008 through July 24, 2012 . . . ." R. 19. During that time, Plaintiff was "diagnosed with a bipolar disorder with OCD symptoms and *he never had a GAF below 60*." *Id.* (emphasis added). The ALJ further notes that the record shows that Plaintiff was "reasonably compliant with attendance . . . made some progress with treatment but was still complaining of mental limitations" and only ceased treatment because he moved from Pennsylvania to West Virginia. R. 20. Next, the ALJ discussed the July 24, 2012 mental status evaluation. *Id.* According to the ALJ, the evaluation "opined that the claimant was often unable to function secondary to his bipolar and OCD condition . . . [and Plaintiff] would miss up to nine days of work per month due to his mental condition." *Id.* The ALJ discussed that he gave little weight to this evaluation because the "opinion is inconsistent with the other clinical data of record . . . [and] there are no treatment notes from Dr. Nigam that demonstrate such severity to substantiate such an opinion" *Id.*

11

Here, substantial evidence supports that the ALJ found persuasive contradictory evidence that allowed him to afford little weight to the July 24, 2012, mental status evaluation. Not only did the ALJ find that the mental status evaluation was inconsistent with the record, it was also inconsistent with PA Psych Care's prior assessments of Plaintiff. As the ALJ noted, PA Psych Care's own records indicate that Plaintiff had made "some progress" during his time at PA Psych Care. *Id.* Further, during the relevant period, the ALJ cites that Plaintiff's GAF score had never been below 60 at PA Psych Care. A score between 61-70 indicates only mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning well.[8] As the ALJ discussed, PA Psych Care's prior assessments deviate from the mental status evaluation which suggests Plaintiff would be unable to function in an eight hour workday. R. 20, 388. On this discrepancy alone, substantial evidence exists to support the ALJ's decision to offer little weight.

Under this heading, Plaintiff also raises two additional arguments. Plaintiff first contends that the ALJ mistakenly credited Dr. Nigam for the July 24, 2012 mental status evaluation and, secondly, the evaluation was rejected because Dr. Nigram did not have any other treatment notes on the record to compare to the mental status evaluation. These arguments are unpersuasive. Dr. Almendrala and Dr. Nigam are both cited on the mental status evaluation. R. 388. Both doctors appear on various records throughout PA Psych Care's medical records. R. 313-52, 388-433. Regardless if Dr. Nigam, Dr. Almendrala, or both doctors are credited with creating the mental status evaluation, the ALJ's conclusion is the same - the evaluation is inconsistent with the PA Psych Care record where both doctors worked and are credited on various records. Finally, in Plaintiff's brief, Plaintiff misquotes the ALJ's decision to suggest that the ALJ believed there "were no treatment notes from Dr.

---

[8] MICHIGAN STATE UNIVERSITY, *supra* note 7.

Nigram." ECF No. 15 *6. Plaintiff neglected to quote the full sentence which states "there are no treatment notes from Dr. Nigam *that demonstrate such severity to substantiate such an opinion*." R. 20. As such, substantial evidence is satisfied under this claim.

2. The ALJ's Decision to Give "Some Weight" to the Examining Psychologist

Under this claim, Plaintiff contends that the ALJ failed to provide any reason for only giving Dr. Marion's report, the examining psychologist, "some weight." Defendant argues that the ALJ did provide a reason in the report, adopting the reasoning of Dr. Schnepp, the state agency psychologist.

An ALJ "must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether" an individual is disabled. 20 C.F.R. § 404.1527(e)(2)(i). Further, the ALJ "will evaluate the findings using the relevant factors in paragraphs (a) through (d) of [§ 404.1527]." § 404.1527(e)(2)(ii). Here, the ALJ "gave some weight to Dr. Marion's report." R. 20. The ALJ found that Dr. Marion's "findings and opinion as to [Plaintiff's] ability to make performance adjustments are consistent with the record as a whole. However, Dr. Marion's opinion as to the claimant's ability to make occupational adjustments is inconsistent with the record as a whole." *Id.* In coming to this conclusion, the ALJ cites Dr. Marion's diagnosis of Plaintiff's bipolar disorder and learning disability. *Id.* The ALJ found this opinion consistent with the record, as evidenced by listing these diagnoses previously as "severe impairments" at step-two in the five-step sequential evaluation process. R. 14. Further, the ALJ discussed Dr. Marion's decision to assign Plaintiff a GAF score of 35. R. 20. Earlier in the ALJ's opinion, he discussed Plaintiff's treating physician's GAF score of 60+. R. 19. Here, substantial evidence supports that the ALJ properly considered Dr. Marion's report, compared it to the record,

and applied "some weight" based on the standards provided in § 404.1527.

3. The ALJ's Decision to Give "Significant Weight" to the State Agency Consultant

Next, Plaintiff argues that the ALJ erred in granting significant weight to the state agency consultant. Plaintiff contends that the state agency consultant's conclusion is inconsistent with both the treating source and the examining source. Further, Plaintiff claims that the ALJ provided no insight or specificity for his decision to afford the state agency consultant's conclusion significant weight. Defendant argues that the ALJ appropriately relied on the state agency consultant's opinion.

"In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6P, 1996 WL 374180 *3. When an ALJ considers evidence from nonexamining sources, they "apply the rules in paragraphs (a) through (d) of" § 404.1527. § 404.1527(e).

Here, the ALJ gave considerable weight to the state agency psychological consultant's psychiatric review technique and mental RFC. R. 21. The ALJ discussed the consultant's conclusion "that any psychiatric impairment the claimant may have was not significantly to moderately limiting." R. 21, 365-81. The ALJ also noted that the consultant gave some weight to Dr. Marion's report "as to the [Plaintiff's] ability to make performance adjustments." R. 21. The ALJ concluded that the consultant's conclusions are "consistent with the record as a whole and evidence received at the hearing level does not show that [Plaintiff] is more limited than determined by the . . . consultant." *Id.* Therefore, because the ALJ analyzed the consultant's conclusions through the standard required in § 404.1527, and "a reasonable mind might accept as adequate to support a conclusion," the ALJ's decision to afford great weight to the state agency consultant is supported

by substantial evidence. *Pierce*, 487 U.S. at 664-65.

4. The ALJ's RFC Determination

In Plaintiff's final claim, he argues that the ALJ's RFC finding is not supported by substantial evidence because it is inconsistent with the evidence on the record. Further, Plaintiff contends that the RFC finding does not incorporate the identified limitations discussed in the state agency consultant's assessment. Defendant maintains that the ALJ's RFC finding was appropriately constructed under agency guidelines.

In this case, the Mental RFC completed by the state agency consultant was broken down into three section: (1) summary conclusions; (2) remarks; and (3) the functional capacity assessment. R. 365-66. As the Social Security Administration's guidelines, called the Program Operations Manual System ("POMS"),[9] explain: "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and **does not constitute the RFC assessment**." POMS DI 24510.060. It also explains "**Section III– Functional Capacity Assessment**, is for recording the mental RFC determination. It is in this section that the **actual metal RFC assessment is recorded**, explaining the conclusions indicated in section I . . . ." *Id. See also Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636-37 (3rd Cir. 2010) ("Section I of the [mental RFC] form may be assigned little or no weight.").

Plaintiff's primary contention is that the ALJ's RFC finding does not incorporate the state agency consultant's findings, citing section 1 of the Mental RFC. However, based on case law and the Commissioner's own guidelines, only section III of the Mental RFC is generally considered by the ALJ. POMS DI 24510.060. As such, because the ALJ's RFC finding is based on section III of

---

[9] Available online at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060.

the mental RFC, substantial evidence supports the ALJ's conclusion.

Plaintiff also claims that the ALJ's RFC does not address Plaintiff's limitations in his ability to work with others or be limited to one and two-step tasks. However, in his RFC determination, the ALJ found that Plaintiff "is limited to performing only *simple, repetitive, routine work processes* . . . [and] can perform no work with the public and *no tasks requiring team work.*" R. 17-18 (emphasis added). Clearly, these limitations addressed in the state agency consultant's mental RFC are met in the ALJ's final RFC.

## V. RECOMMENDATION

In reviewing the record, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

1. Mr. Campbell's Motion for Summary Judgment be **DENIED**. ECF No. 14.
2. Commissioner's Motion for Summary Judgment be **GRANTED** for the reasons set forth. ECF No. 16.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: December 12, 2014                              /s/ *James E. Seibert*
                                                      JAMES E. SEIBERT
                                                      UNITED STATES MAGISTRATE JUDGE